```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/23/10
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MODAVOX, INC.,

        Plaintiff,

v.

TACODA, INC.,

        Defendant.

Civil Action No.
1:07-cv-07088 (CM)(GWG)

**STIPULATION** AND ORDER   /my/

---

WHEREAS Dr. Daniel Coughlin ("Dr. Coughlin"), Modavox, Inc.'s ("Modavox") former counsel and former partner of Fox Rothschild LLP was deposed on November 5, 2009,

IT IS HEREBY STIPULATED AND AGREED, by and among the undersigned, that:

(1)    TACODA, Inc. ("Tacoda") agrees that it will not seek to compel answers to the questions listed in the attached Schedule A to this Stipulation, to which counsel for Modavox instructed Dr. Coughlin not to answer during the Deposition;

(2)    Modavox agrees that it will not proffer additional evidence in any form (including but not limited to testimony or affidavits) from Dr. Coughlin on questions listed in the attached Schedule A to this Stipulation, to which counsel for Modavox instructed Dr. Coughlin not to answer during the Deposition based upon the attorney-client privilege and/or the attorney work product immunity.

(3)    Modavox agrees to provide a verified response to the question identified in Schedule B within thirty (30) days of the execution of this Agreement. Modavox agrees to consult with Dr. Coughlin to respond to the question in Schedule B and allow Dr. Coughlin to verify Modavox's response. Modavox agrees that the question included in Schedule B will not

be counted as an interrogatory under Federal Rule of Civil Procedure 33(a)(1).

(4)    Dr. Coughlin agrees to consult with Modavox to respond to the question in Schedule B and verify Modavox's response. To the extent that Dr. Coughlin, by and through his undersigned attorney, is a party to this stipulation, he is only a party as to this Paragraph 4 and can only be bound accordingly.

| SHAUB & WILLIAMS LLP | ORRICK, HERRINGTON & SUTCLIFFE LLP |
|---|---|
| By: _____<br>David R. Shaub<br>Lisbeth Bosshart Merrill<br>12121 Wilshire Boulevard, Suite 205<br>Los Angeles, CA 90025-1165<br>Telephone: (310) 826-6678<br>Facsimile: (310) 826-8042<br>lawfirm@sw-law.com<br>*Attorneys for Plaintiff Modavox, Inc.* | By: _____<br>Paul R. Gupta<br>Joseph A. Sherinsky<br>666 Fifth Avenue<br>New York, New York 10103-0001<br>Telephone: (212) 506-5000<br>Facsimile: (212) 506-5151<br>pgupta@orrick.com<br>*Attorneys for Defendant TACODA, Inc.* |

MATALON SHWEKY ELMAN

By: _____
Howard I. Elman
Matalon Shweky Elman
450 Seventh Avenue, Suit 1409
New York, New York 10123
Telephone: (212) 244-9000
helman@mselaw.com
*Attorney for Dr. Daniel Coughlin*

be counted as an interrogatory under Federal Rule of Civil Procedure 33(a)(1).

(4) Dr. Coughlin agrees to consult with Modavox to respond to the question in Schedule B and verify Modavox's response. To the extent that Dr. Coughlin, by and through his undersigned attorney, is a party to this stipulation, he is only a party as to this Paragraph 4 and can only be bound accordingly.

| SHAUB & WILLIAMS LLP | ORRICK, HERRINGTON & SUTCLIFFE LLP |
|---|---|
| By: *[signature]* <br> David R. Shaub <br> Lisbeth Bosshart Merrill <br> 12121 Wilshire Boulevard, Suite 205 <br> Los Angeles, CA 90025-1165 <br> Telephone: (310) 826-6678 <br> Facsimile: (310) 826-8042 <br> lawfirm@sw-law.com <br> *Attorneys for Plaintiff Modavox, Inc.* | By: *[signature]* 3/22/10 <br> Paul R. Gupta <br> Joseph A. Sherinsky <br> 666 Fifth Avenue <br> New York, New York 10103-0001 <br> Telephone: (212) 506-5000 <br> Facsimile: (212) 506-5151 <br> pgupta@orrick.com <br> *Attorneys for Defendant TACODA, Inc.* |

**MATALON SHWEKY ELMAN**

By: _____
Howard I. Elman
Matalon Shweky Elman
450 Seventh Avenue, Suit 1409
New York, New York 10123
Telephone: (212) 244-9000
helman@mselaw.com
*Attorney for Dr. Daniel Coughlin*

SO ORDERED: *[signature]* DATE: 3/23/2010
GABRIEL W. GORENSTEIN
UNITED STATES MAGISTRATE JUDGE

## SCHEDULE A

### Instructions Not to Answer

- Dr. Coughlin was instructed not to answer whether there was any issue in connection with Modavox about a need to corroborate the "spec document" referred to in Exhibit 4, which is a July 11, 2007 e-mail from Andy Burgess to Dr. Coughlin stating:

  Dan,

  Yesterday, you had spoken of a need to corroborate the spec document - if you look at Fig. 4 and Fig. 11 in the published patent there is a date. Could that be used? The figures are just screen shots made for the purpose of teaching... For demonstration purposes we copied existing websites and placed the metaphor code on them. When it came time to file the patent we just copied the screens. The dates are accurate of the day we copied the sites.

  Andy

  *See* Transcript of Deposition of Daniel Coughlin at 51, lines 3-22.

- Dr. Coughlin was instructed not to answer whether he had any reason to believe that he requested corporate information about Tacoda prior to July 25, 2007. *See id.* at 67, line 12 through 69, line 12.

- Dr. Coughlin was instructed not to answer what the rationale from the new claim 21 claim chart in Exhibit 7 that the Tacoda system "obviously has service response to assemble with differing response codes" meant to him. *See id.* at 75, line 13 through 76, line 18.

- Dr. Coughlin was instructed not to answer whether he believed it would be "reasonable to simply state that an element is obvious without further analysis." *See id.* at 76, line 20 through 77, line 19.

- Dr. Coughlin was instructed not to answer whether the level of detail provided in the rationale for determining that an element of the claims charts was met by the Tacoda system was what he typically included in claims charts. *See id.* at 87, lines 11-23.

- Dr. Coughlin was instructed not to answer whether he had legal support for the statement "one-to-one correspondence between structure in an accused device," and his explanation of it as set forth in the following colloquy:

  A. Well, as I also said, you know, we're not looking at just two or three lines of code. There were various elements in the code, various routines being called, subroutines, and my understanding of patent law is that it does not necessarily have to be a strict one-to-one correspondence between structure in an accused device and the specific limitations of a claim.

-3-

> ...
> Q. When you say one-to-one correspondence between structure in an accused device, what do you mean by that?
> ...
> A. I'll analogize to mechanical inventions maybe for simply clarity sake. That a device, a mechanical device may have three doodads and two doohickeys and a claim may have two elements or 12 elements, the fact that there was not an exact one-to-one correspondence between doohickeys and claim elements doesn't mean you can't find infringement."

*See id.* at 114, line 16 through 117, line 3.

- Dr. Coughlin was instructed not to answer which claim elements he spent more time discussing. *See id.* at 122, line 16 through 123, line 19.

- Dr. Coughlin was instructed not to answer whether the second code module was ever referred to as the secondary code module other than in Exhibit 11. *See id.* at 124, line 14 through 126, line 23.

- Dr. Coughlin was instructed not to answer what was meant by the words "we need confirmation that the 'infringing' web-site broadly follows the steps" in Exhibit 12. *See id.* at 132, line 18 through 133, line 19.

- Dr. Coughlin was instructed not to answer what was meant by the terms used in Exhibit 12. *See id.* at 133, line 21 through 137, line 4.

- Dr. Coughlin was instructed not to answer whether Exhibits 12 and 13 related to issues that he had with the infringement analysis and with the August 3 claim charts. *See id.* at 142, line 9 through 143, line 6.

- Dr. Coughlin was instructed not to answer whether the August 3 claim charts needed work. *See id.* at 144, line 21 through 145, line 15.

- Dr. Coughlin was instructed not to answer whether he continued to work on the claim charts after the complaint was filed. *See id.* at 145, line 17 through 147, line 25.

- Dr. Coughlin was instructed not to answer whether any of the issues raised in Exhibits 12 and 13 were resolved between August 3 and August 9 when the complaint was filed. *See id.* at 148, lines 5-16.

- Dr. Coughlin was instructed not to answer whether claim charts from December 2007 were an updated version of the August 3 claim charts. *See id.* at 150, lines 9-18.

- Dr. Coughlin was instructed not to answer whether cookies would have been relevant to Dr. Kursh's analysis. *See id.* at 156, line 25 through 158, line 4.

03/23/2010 14:11 FAX 12125063576    ORRICK HERRINGTON                    ☑007/011
Case 1:07-cv-07088-CM -GWG   Document 75   Filed 03/23/10   Page 5 of 9

-4-

- Dr. Coughlin was instructed not to answer whether the code or JAVA applet would have been relevant to Dr. Kursh's analysis. *See id.* at 159, lines 15-25.
- Dr. Coughlin was instructed not to answer whether a record of the server log, cleared router, or cleared browser would have been helpful for an infringement analysis. *See id.* at 160, line 12 through 161, line 20.
- Dr. Coughlin was instructed not to answer whether it would be "fair to say that an infringement analysis of Tacoda would be . . . a major effort." *See id.* at 168, line 6 through 169, line 18.
- Dr. Coughlin was instructed not to answer the amount of time spent by an expert that Dr. Coughlin had hired previously to perform an infringement analysis. *See id.* at 178, line 13 through 179, line 15.
- Dr. Coughlin was instructed not to answer whether he believed the patents are about simply adding functionality. *See id.* at 183, line 2 through 184, line 12.
- Dr. Coughlin was instructed not to answer whether there was any reason the complaint was filed on August 9, 2007. *See id.* at 191, lines 14-21.
- Dr. Coughlin was instructed not to answer whether he worked on a complaint against Tacoda on July 24, 2007. *See id.* at 193, lines 6-17.
- Dr. Coughlin was instructed not to explain what the rationale "obvious function" meant on a claim chart. *See id.* at 195, line 23 through 196. line 18.
- Dr. Coughlin was instructed not to describe the petition to make special, the subject matter of Exhibit 20, which includes an October 23, 2007 e-mail from Jordan Meschkow to David Ide and Nathaniel Bradley; an October 23, 2007 e-mail from Nathaniel Bradley forwarding the Meschkow e-mail to Daniel Coughlin; an October 24, 2007 e-mail from Daniel Coughlin to Nathaniel Bradley, copying John Skinner; and an October 24, 2007 e-mail from Nathaniel Bradley to Daniel Coughlin, copying John Skinner. *See id.* at 197, line 6 through 204, line 7.
- Dr. Coughlin was instructed not to describe the content of a meeting or conversation with John Skinner on November 29, 2007. *See id.* at 204, line 23 through 207, line 4.
- Dr. Coughlin was instructed not to explain what the handwritten note in Exhibit 21 that states: "have to be able to defend why we brought suit" was in reference to. *See id.* at 207, lines 6-17.

-5-

- Dr. Coughlin was instructed not to explain why the litigation against Tacoda was moved up. *See id.* at 210, lines 16-23.

## SCHEDULE B

Pursuant to this stipulation, defendant Tacoda, Inc. ("Tacoda") hereby requests that plaintiff Modavox, Inc. ("Modavox") and Daniel Coughlin, its former counsel, answer the following question separately, fully, and under oath within thirty (30) days of the execution of this Stipulation.

A.  "Any" shall be understood to include and encompass "all."

B.  The singular shall always include the plural and the present tense shall also include the past tense.

C.  "Modavox" means Modavox, Inc. and its directors, officers, parents, subsidiaries, predecessors, successors, assigns, agents, servants, employees, investigators, attorneys, and all other persons and entities representing it or acting on its behalf.

D.  "Dr. Coughlin" means Dr. Daniel Coughlin, former counsel for Modavox in this litigation.

## QUESTION NO. 1

Did Dr. Coughlin ever send any bills to Modavox on account of any work he did when he was with Drier LLP?

-8-