UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AUGME TECHNOLOGIES, INC., a Delaware corporation, | CIVIL ACTION 07 Civ. 7088 (CM)(GWG) |
| Plaintiff, | Hon. Gabriel W. Gorenstein |
| v. | |
| TACODA, INC., a Delaware corporation, | |
| Defendant. | |

**OPPOSITION OF TACODA, INC. TO THE MOTION OF AUGME TECHNOLOGIES, INC. FOR SANCTIONS FOR SPOLIATION OF EVIDENCE AND EVASIVE DISCLOSURE PRACTICES**

TABLE OF CONTENTS

Page

TABLE OF CONTENTS .................................................................................................. i

TABLE OF AUTHORITIES ............................................................................................ ii

I.      INTRODUCTION ............................................................................................... 1

II.     THRESHOLD ISSUE OF RELEVANCE ........................................................ 2

III.    MODAVOX MISCHARACTERIZES TACODA'S TECHNOLOGY IN AN
        ATTEMPT TO ASSERT THE RELEVANCE OF DOCUMENTATION
        PURPORTEDLY MISSING ............................................................................... 5

IV.     SANCTIONS FOR PURPORTED SPOLIATION OF EVIDENCE ARE
        UNWARRANTED ............................................................................................. 12

        A.      TACODA Has Responded and Continues to Respond in Good Faith
                to Modavox's Discovery Demands Notwithstanding Modavox's
                Demands for Irrelevant Documentation ................................................ 12

        B.      Adverse Inference Sanctions Are Unwarranted Given TACODA's
                Production Of The Source Code Repository ......................................... 14

        C.      Tacoda Did Not Withhold Or Destroy Any Relevant Documentation
                Concerning Data Tags, Data Agents, Server Configuration Files, Or
                Web Logs .............................................................................................. 15

                1.      Data Tags ................................................................................. 17

                2.      Data Agents .............................................................................. 18

                3.      Server Configuration Files ........................................................ 20

                4.      Web Server Logs ...................................................................... 20

V.      TACODA HAS NOT VIOLATED ANY COURT ORDER THAT WOULD
        OTHERWISE WARRANT SANCTIONS ....................................................... 21

VI.     CONCLUSION ................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

*Cases*:

*BankAtlantic v. Blythe Eastman Paine Wenner*, 12 F.3d 1045 (11th Cir. 1994) ................22

*Chan v. Triple 8 Palace, Inc.*, 2005 WL 1925579................................................3, 12

*Callpod, Inc. v. GN Netcom, Inc.*, 2010 WL 1292401 (N.D. Ill. Mar. 29, 2010) ................10

*Cochran Consulting, Inc. v. Uwatec USA, Inc.*, 102 F.3d 1224 (Fed. Cir. 1996) ................12

*Concord Boat Corp. v. Brunswick Corp.*, 1997 WL 33352759 (E.D. Ark. 1997) ...............3

*Convolve, Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162 (S.D.N.Y. 2004) ...................15, 16

*Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009) ...........................10

*In re NTL, Inc. Securities Litigation v. Blumenthal*, 244 F.R.D. 179 (S.D.N.Y. 2007) ........3, 12, 16

*McLeod, Alexander, Powell & Apffel, P.C. v. Quarels*, 894 F.2d 1482 (5th Cir. 1990) .......22

*MPT, Inc. v. Marathon Labels, Inc.*, No. 1:04-CV-2357, 2006 WL 1644441
    (N.D. Ohio June 13, 2006).......................................................................10

*Pension Comm. of University of Montreal Pension Plan v. Banc of America
    Securities*, 2010 WL 184312 (S.D.N.Y. Jan. 5, 2010)..............................................3

*Phoenix Four, Inc. v. Strategic Resources Corp.*, 2006 WL 1409413
    (S.D.N.Y. 2006)...................................................................................14, 15

*Port Authority Police Asian Jade Society of N.Y. & N.J., Inc. v. Port Authority
    of N.Y. & N.J.*, 601 F. Supp. 2d 566 (S.D.N.Y. 2009)..............................................16

*Regents of Univ. of Cal. v. Micro Therapeutics, Inc.*, No. C 03-05669 JW, 2007 WL
    2429412 (N.D. Cal. Aug. 23, 2007) ............................................................10

*Residential Funding Corp.* 306 F.3d 99, 108-09 (2d Cir. 2002) ...........................3, 16

*Treppel v. Biovail Corp.*, 249 F.R.D. 111 (S.D.N.Y. 2008) ...............................12

*Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 77 (S.D.N.Y. 1991) ........................3

*Williams v. Saint-Gobain Corp.*, 2002 WL 1477618 (W.D.N.Y. 2002) ...........................15

*Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212 (S.D.N.Y. 2003) .......................................3, 16, 17

***Federal Rules:***

Fed. R. Civ. P. 26(b)(2)(C) (2007) ...........................................................................13

Fed. R. Civ. P. 37(a)(5) ..............................................................................................22

Fed. R. Civ. P. 37(b) ..................................................................................................22

Fed. R. Civ. P. 37(b)(2) ..............................................................................................21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AUGME TECHNOLOGIES, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>TACODA, INC., a Delaware corporation,<br><br>Defendant. | 07 Civ. 07088 (CM) (GWG)<br><br>Hon. Colleen McMahon<br><br>**OPPOSITION OF TACODA, INC. TO THE MOTION OF AUGME TECHNOLOGIES, INC. FOR SANCTIONS FOR SPOLIATION OF EVIDENCE AND EVASIVE DISCLOSURE PRACTICES** |

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Having utterly failed after extensive discovery to establish a single shred of factual support for its claims of patent infringement against TACODA, Inc. ("TACODA"), Augme Technologies, Inc., formerly known as Modavox, Inc., ("Modavox"), has filed another sanctions motion ("New Sanctions Motion") in yet another attempt to persuade this Court to issue sanctions and make unsupported findings of fact based on purported "spoliation of evidence and evasive disclosure practices." Like its previous motion, Modavox's new motion is without merit.  It reveals a desperate plaintiff – one which seeks to establish by diversion and obfuscation what it cannot achieve by facts.

Modavox accuses TACODA of purportedly a) withholding documents from production by failing to provide historical files, providing only samples of files rather than complete files, and providing template files rather than operational files; b) producing documents with altered or removed metadata; c) not retaining documents after receipt of notice of alleged infringement; and d) destroying documents

after commencement of litigation in contravention of its document retention policy. Modavox also asserts that it is entitled to a host of draconian sanctions.

Distilled to its essence, Modavox's New Sanctions Motion is a transparent attempt to persuade this Court to make findings of fact that are contrary to the plain language of the Modavox patent claims and Judge McMahon's claim construing ruling in this action.

In this Opposition to the New Sanctions Motion, TACODA demonstrates – based upon the relevance argument Modavox presents in the New Sanctions Motion – that Data Tags and Data Agents are relevant to assessment of whether they perform any of the "embedded first code module" and "dynamic second code module" functionality claimed in the Modavox patents at issue in this lawsuit, but that the Server Configuration Files and Web Server Logs that Modavox argues are the subject of spoliation are irrelevant to such an infringement analysis. Modavox cannot establish that TACODA destroyed or altered any relevant evidence because TACODA has not done so.

Because Modavox's New Sanctions Motion is as unsubstantiated as the original motion, the Court should deny the motion in its entirety and award TACODA its attorneys' fees incurred in opposing yet another frivolous, vacuous motion.

## II.    THRESHOLD ISSUE OF RELEVANCE

Although Modavox's New Sanctions Motion suffers from the same lack of clarity and precision that characterized its first sanctions motion, Modavox does for the first time in the new motion papers purport to assert the <u>relevance</u> of four types of documentation to which Modavox asserts it is entitled.

The Court should deny the Second Sanctions Motion because Modavox cannot establish that TACODA destroyed any "relevant" evidence.  A party seeking an adverse inference sanction must provide sufficient evidence from which a reasonable trier of fact could infer that the destroyed evidence would have been harmful to the alleged

spoliator's case. *See Residential Funding Corp,* 306 F.3d 99, 108-09 (2d Cir. 2002); *In re NTL, Inc. Securities Litigation v. Blumenthal,* 244 F.R.D. 179, 199 (S.D.N.Y. 2007); *Zubulake v. UBS Warburg LLC,* 220 F.R.D. 212, 220 (S.D.N.Y. 2003).

In the absence of bad faith or gross negligence, neither or which is present here, the moving party must establish the relevance of the missing evidence by submitting *extrinsic evidence* tending to demonstrate that the missing evidence would have been favorable to it. *Pension Comm. of University of Montreal Pension Plan v. Banc of America Securities,* 2010 WL 184312 at *5 (S.D.N.Y. Jan. 5, 2010) ("[W]hen the spoliating party was merely negligent, the innocent party must prove both relevance and prejudice in order to justify the imposition of a severe sanction."); *In re NTL,* 244 F.R.D. at 200; *Chan v. Triple 8 Palace, Inc.,* 2005 WL 1925579 at *8; *Zubulake,* 220 F.R.D. at 221 (holding an adverse inference sanction was unwarranted because the innocent party could not demonstrate that lost tapes contained relevant information). Speculation, moreover, that the purportedly missing information *might* be harmful or unfavorable to the alleged spoliator is insufficient to warrant an adverse inference instruction. *See Zubulake,* 220 F.R.D. at 221 n. 55 (citing *Turner v. Hudson Transit Lines, Inc.,* 142 F.R.D. 68, 77 (S.D.N.Y. 1991) and *Concord Boat Corp. v. Brunswick Corp.,* 1997 WL 33352759, at * 7 (E.D. Ark. 1997)).

The case law is clear that Modavox must provide extrinsic evidence that demonstrates the purportedly missing information would tend to support its claim construction theory and theory of infringement. *Zubulake,* 220 F.R.D. at 221. Specifically, Modavox argues that the allegedly missing information "could be used by Modavox to map TACODA's technology to claims in the Modavox Patents." Accordingly, to show the purportedly missing information is relevant, Modavox must produce extrinsic evidence that demonstrates the Data Tags, Data Agents, Server Configuration Files, and Web Serer Logs would support Modavox's theory that

TACODA's systems infringe the patents at issue in this litigation.  Modavox fails to meet this burden.

Modavox asserts that its motion papers demonstrate the relevance of four types of documents that purportedly have not adequately been produced:  Data Tags, Data Agents, Server Configuration Files, and Web Server Logs[1] (New Sanctions Motion at 17).  TACODA will respond to Modavox's allegations of purported deficiencies in the production of each sort of documentation in turn, below, but first addresses the threshold issue of relevance upon which the Modavox motion relies to justify the sanctions it seeks.

In Section C (pp. 13-17) of the New Sanctions Motion, Modavox states that the information purportedly not produced is "relevant and important" to its infringement analysis because it "could be used by Modavox to map TACODA's technology to the claims in the Modavox Patents."  (New Sanctions Motion at 13-14.)

Modavox explains that Claim 20 of its U.S. Patent No. 7,269,636 (the "'636 Patent") is one of Modavox's relevant patent claims and states that it "details the 'end-to-end' process that Modavox claims TACODA infringed in regard to its ad delivery to customer websites."  (New Sanctions Motion at 13.)  Claim 20 of the '636 Patent reads as follows:

> 20.  A method of operating a computer network to add function to a Web page comprising:
>
> (1) downloading said Web page at a processor platform, said downloading operation being performed by a Web browser;
>
> (2) when said Web page is downloaded, automatically executing a first code module embedded in said web page, wherein execution of said first code module initiates retrieval of a second code module;
>
> (3) receiving, at a server system, information from said processor platform;

---

[1] TACODA has reordered the four categories of documentation to reflect the sequence in which each is encountered in the TACODA systems at issue.

> (4) providing, from said server system, said second code module having a service response, said service response being formed in response to said information;
>
> (5) downloading said second code module to said processor platform; and
>
> (6) initiating execution of said second code module at said processor platform.

*See* New Sanctions Motion at 13.  Modavox states further in footnotes to its brief that the claim term "embedded" means contained within the HTML code and that "information" refers to visitor parameters such as zip code, age, gender, education, and interests of the web user, etc.  (New Sanctions Motion at 13 nn. 8-10.)

Thus, Modavox has tied the justification for the sanctions it seeks to the importance of the purportedly missing documentation to establish that TACODA practiced specific elements of Claim 20 of the '636 Patent.  TACODA welcomes this focus on the relevance of documentation to the establishment of specific claim elements because the documentation already produced and utilized in discovery in this case establishes that TACODA does not practice at least elements 2 and 4 of Claim 20 of the '636 Patent.[2]  Modavox knows that it cannot prove these claim elements and so, through this New Sanctions Motion, it seeks to divert the Court's attention to purported discovery deficiencies to establish by sanction what it cannot establish by the facts.  Such pretext should not be tolerated by this Court.

## III.   MODAVOX MISCHARACTERIZES TACODA'S TECHNOLOGY IN AN ATTEMPT TO ASSERT THE RELEVANCE OF DOCUMENTATION PURPORTEDLY MISSING

After explaining that the relevance of the documents it seeks is tied to establishing that TACODA practices the elements of Claim 20 of the '636 Patent in section C.1. of its New Sanctions Motion (p. 13), Modavox purports to describe the operation of

---

[2] All of the asserted claims require the same fundamental elements of an embedded first code module and a second code module that is called by the first.

TACODA's targeted advertising systems in section C.2. (pp. 13-17).  As described in more detail, below, although a portion of this section of the New Sanctions Motion describing the TACODA Data Tag is factually accurate, much of the discussion contains erroneous, self-serving mischaracterizations of TACODA's technology in an attempt to persuade the Court that even though Modavox has found no direct evidence that TACODA practices key elements of Claim 20 of the '636 Patent, the documentation purportedly withheld or destroyed would prove what the facts in evidence have not.

# REDACTED

The remainder of the Modavox's description of the TACODA technology contained in section C.2. of the New Sanctions Motion is erroneous, however.

Modavox's self-serving mischaracterization of the TACODA targeted advertising technology begins with this erroneous statement:

# REDACTED

# REDACTED

# REDACTED

In its March 24, 2009, *Markman* ruling the Court adopted the plain English meaning of the word "embedded" and defined the phrase "first code module embedded" which appears in element 2 of Claim 20 of the '636 Patent as "a computer-readable program that is contained within the HTML code of a web page." (Claim Construction Ruling at 5 (emphasis added), Exhibit 55 to Modavox's Motion Papers).  In adopting this definition, the Court expressly rejected Modavox's effort to define "embedded" in a manner that would have made Dr. Cromarty's assertion that a TACODA Data Agent could constitute a first code module tenable.  The Court stated:

Modavox urges that "embedded" refers either to a code module that is physically planted and contained within the web page or to a code module that, while not physically present, is referenced in the web page for future insertion.

I reject Modavox's effort to broaden the scope of the language it used in its patents. Computer code is not "embedded" within a web page when it is merely referenced for future insertion into the web page. Rather, an embedded code is a code that has already been placed into the architecture of the web page. Every principle of claim construction supports such an interpretation.

(*See* Claim Construction ruling at 5-6.)

# REDACTED

See, *e.g.*, *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009) ("Once a district court has construed the relevant claim terms, and unless altered by the district court, then that legal determination governs for purposes of trial. No party may contradict the court's construction to a jury."); *Callpod, Inc. v. GN Netcom, Inc.*, 2010 WL 1292401, *3 (N.D. Ill. Mar. 29, 2010) (striking patentee's technical expert testimony that attempted to apply a construction the court had rejected in its claim construction); *Regents of Univ. of Cal. v. Micro Therapeutics, Inc.*, No. C 03-05669 JW, 2007 WL 2429412, *3 (N.D. Cal. Aug. 23, 2007) (striking portion of patentee's expert's testimony offered to rebut accused infringer's summary judgment motion since the testimony applied a claim construction different from how the court had previously construed the claim term); *MPT, Inc. v. Marathon Labels, Inc.*, No. 1:04-CV-2357, 2006 WL 1644441, *2-*3 (N.D. Ohio June 13, 2006) (granting accused infringer's motion to strike portions

of patentee's technical expert's testimony since the testimony effectively contradicted the district court's claim construction of the meaning of the term "permanently" as used in the claim).

# REDACTED

Thus, Modavox fails to set forth a credible theory pursuant to which the claim elements of Modavox's '636 Patent map onto TACODA's ad serving technology. But more importantly for purposes of this New Sanctions Motion, Modavox's reliance upon a claim construction expressly rejected by this Court to attempt to establish the relevance

of purportedly missing documentation has been unmasked as a disingenuous, self-serving fabrication that absolutely fails to demonstrate the relevance of most all of the documentation that is purportedly missing and which is the subject of Modavox's New Sanctions Motion.

In sum, Modavox's relevance argument succeeds only in demonstrating the relevance of TACODA's Data Tags and Data Agents because analysis of these code files is relevant to assessment of whether they perform any of the "embedded first code module" and "dynamic second code module having a service response formed in response to information about visitor parameters" functionality claimed in the Modavox patents. By contrast, Server Configuration Files and Web Log Files in the TACODA systems are not involved in the embedded first code module or the dynamic second code module called for by Claim 20 of Modavox's '636 Patent (and the other asserted claims) and, thus, are irrelevant to an analysis of alleged infringement.

## IV.    SANCTIONS FOR PURPORTED SPOLIATION OF EVIDENCE ARE UNWARRANTED

### A.    TACODA Has Responded and Continues to Respond in Good Faith to Modavox's Discovery Demands Notwithstanding Modavox's Demands for Irrelevant Documentation

To warrant adverse inference sanctions, the moving party must establish that relevant documents were destroyed with a culpable sate of mind. *Treppel v. Biovail Corp.,* 249 F.R.D. 111, 120 (S.D.N.Y. 2008). In the absence of bad faith or gross negligence, neither or which is present here, the moving party must establish the relevance of the missing evidence by submitting *extrinsic evidence* tending to demonstrate that the missing evidence would have been favorable to it. See *In re NTL,* 244 F.R.D. at 200; *Chan v. Triple 8 Palace, Inc.,* 2005 WL 1925579 at *8. See also, *Cochran Consulting, Inc. v. Uwatec USA, Inc.,* 102 F.3d 1224, 1226 & 1231 (Fed. Cir. 1996) (reversing discovery sanctions imposed against accused infringer for failing to

produce a computer print out of source code in part because the code was "unnecessary to the cause of the plaintiff" and, therefore, not relevant to the infringement charges, as "the presence of the claim elements and the performance of the claim function" did not depend on the use of any particular code and "infringement was not proved by reference to the ROM code."); FED. R. CIV. P. 26(b)(2)(C) (2007) ("discovery ... shall be limited by the court if it determines that: (i) the discovery sought is unreasonably *cumulative or duplicative*, or is obtainable from some other source that is more convenient, less burdensome, or less expensive") (emphasis added).

Modavox cannot establish that TACODA destroyed or altered any relevant evidence because TACODA has not done so. Between December 2008 and February 2010, TACODA produced over 450,000 source code files including all prior releases of TACODA Audience Network ("TAN") and Audience Management Systems ("AMS") source code, samples of TACODA's Data Tags and Data Agents, in addition to Server Logs and Server Configuration Files notwithstanding their irrelevance to Modavox's patent claims at issue in this suit. Moreover, TACODA made available its entire source code repository and database schemas of its MySQL and Oracle databases thus providing Modavox with comprehensive access to material that would allow any competent software engineer to determine how TACODA's systems operate and whether it infringes the patents-in-suit. Although the repository contained all of the 450,000 source code files TACODA had already produced, the repository provided Modavox with the ability to explore the entire history of TACODA's source code development, including the elemental changes to the source code, view metadata such as date and authorship information, and review programmer comments. (*See* Declaration of Peter Alexander in Support of TACODA's Opposition to Modavox's earlier Motion for Sanctions, dated November 14, 2009 ("Original Alexander Decl.") ¶¶ 46-47.) Nonetheless, in spite of TACODA's repeated explanations of how TACODA's source code is stored in its source code repository (*id.* ¶¶ 17-23) – namely that specific system files are only updated in the

source code safe when changes are made – Modavox continues to falsely characterize this process as "spoliation" (*see* New Sanctions Motion pp. 23-24).

In response to Modavox's continuing – yet unfounded – assertions that the Data Tags, Data Agents, Server Configuration Files, and Web Server Logs, previously provided by TACODA were insufficient, TACODA has scoured third-party sources, searched for any and all additional documents sought by Modavox, and will produce any such additional documentation that is identified, notwithstanding that this information would either be (i) merely cumulative, in that it would merely be useful only as an additional example of relevant system functionality already in evidence or (ii) irrelevant to the Modavox patent claims at issue in this lawsuit.

Furthermore, in response to the Court's direction from the bench at the time Modavox's original motion for sanctions was withdrawn, a meeting was arranged and held between the TACODA's technical expert, Peter Alexander, and Modavox's experts, Andrew Cromarty and Arthur Keller. (Tabler Decl. ¶ 4.)  In preparation for the meeting, TACODA's expert prepared a table setting forth for Modavox the locations within TACODA's production of no less than 97 files that Modavox had erroneously asserted were missing.  (Tabler Decl. ¶ 5.)  Once again, however, Modavox responded to TACODA's good-faith efforts at the meeting of experts to resolve Modavox's concerns over source code production by declaring the meeting was a complete waste of time. (Tabler Decl. ¶ 6.)

**B.    Adverse Inference Sanctions Are Unwarranted Given TACODA's Production Of The Source Code Repository**

The adverse inference sanctions Modavox seeks are unwarranted given TACODA's production of its source code repository.  Courts have consistently held that adverse inference sanctions are unwarranted where, as is the case here, the party accused of spoliation produces the missing material. *See Phoenix Four, Inc. v. Strategic Resources Corp.*, 2006 WL 1409413, at *7 (S.D.N.Y. 2006) (emphasis added); *see also*

*Convolve, Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 167-68 (S.D.N.Y. 2004); *Williams v. Saint-Gobain Corp.*, 2002 WL 1477618, at *3 (W.D.N.Y. 2002) (holding adverse inference sanctions were inappropriate for the failing to produce relevant evidence until <u>five days before trial</u>).

In *Phoenix Four, Inc. v. Strategic Resources Corp.*, the plaintiff sought adverse inference sanctions against the defendant for its failure to produce documents and electronically stored information contained on its servers. *See Phoenix Four, Inc.*, 2006 WL 1409413 at *1-2. Although the court ultimately determined that the defendant's production of the relevant documents after the close of discovery was untimely, it concluded adverse inference sanctions were too severe:

> Although Phoenix has established the elements necessary for an adverse
> inference instruction, I find that such a severe sanction is not warranted
> here where the SRC Defendants have come forward with the evidence,
> even if after the close of discovery.

*Id.* at *7.

Applied here, there is even a stronger case that adverse sanctions are inappropriate. Unlike the defendant in *Phoenix Four, Inc.* who failed to produce the relevant material until the eve of trial, TACODA has produced over 450,000 source code files and its source code repository, and discovery remains open in the case. Thus, notwithstanding TACODA's unfounded allegations of spoliation of evidence, adverse inference sanctions are unwarranted.

### C.   TACODA Did Not Withhold Or Destroy Any Relevant Documentation Concerning Data Tags, Data Agents, Server Configuration Files, Or Web Logs

The Court should deny Modavox's Second Sanctions Motion because Modavox cannot establish that TACODA destroyed any relevant evidence "with a culpable state of mind." Absent a court order, a party seeking adverse inference instructions based on the destruction of evidence must establish that the party having control over the evidence had

an obligation to preserve it at the time it was destroyed, and that the destroyed evidence was "relevant" to the party's claim or defense that a reasonable trier of fact could fine that it would support a claim or defense. *See Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106-07 (2nd Cir. 2002).

Moreover, the moving party must establish that the party accused of destroying evidence was under an obligation to preserve the evidence. An obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation. *See Port Authority Police Asian Jade Society of N.Y. & N.J., Inc. v. Port Authority of N.Y. & N.J.,* 601 F. Supp. 2d 566, 569 (S.D.N.Y. 2009); *In re NTL, Inc.*, 244 F.R.D. at 193. The duty, however, extends only to documents and information relevant to a claim or defense. *See id.* at 194.

To warrant adverse inference sanctions for spoliation, the moving party must establish that the alleged spoliator had control of the evidence and had a duty to preserve it at the time it was lost or destroyed. *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003). The duty to preserve evidence arises when a party has notice that the evidence is relevant to litigation or should have known it may be relevant to future litigation. *Id.* at 217. This duty typically arises, however, no later than the date the action is initiated. *See id.* " 'While a litigant is under no duty to keep or retain every document in its possession ... it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action....' " *Convolve, Inc. v. Compac Computer Corp.*, 223 F.R.D. 162, 177 (S.D.N.Y. 2004) (quoting *Zubulake*).

TACODA fulfilled its obligation to preserve relevant information. After learning of the lawsuit, TACODA promptly instituted a litigation hold to preserve documents relating to the structure and operation of TACODA's AMS and TAN systems. (Tabler Decl. ¶ 7.) As part of its litigation hold, TACODA also put in place a process to collect documents and information that might be relevant to the litigation and ultimately be

produced to Modavox.  (*Id.*)  TACODA, as such, has more than satisfied its duty to preserve relevant material.  *See Zubulake*, 220 F.R.D. at 220-21.

As discussed below, Modavox cannot establish that TACODA destroyed any relevant material, let alone done so with a culpable state of mind.

    **1.**      **Data Tags**

# REDACTED

**REDACTED**

# REDACTED

**REDACTED**

# REDACTED

**V.**    **TACODA HAS NOT VIOLATED ANY COURT ORDER THAT WOULD OTHERWISE WARRANT SANCTIONS**

Modavox argues that sanctions are warranted under Rule 37(b)(2) or the Court's inherent powers. (New Sanctions Motion at pp. 53-54.) Modavox does not identify any

particular court order on the record that TACODA purportedly violated, although it asserts that Judge McMahon's standing Rules Governing Electronic Discovery constitute an order the violation of which could justify sanctions (New Sanctions Motion at p. 53.) Notably, however, Modavox offers no evidence that Judge McMahon's e-discovery rules have been violated. Although Modavox claims that violation of a specific discovery order is not required to warrant adverse inference sanctions, case law does not support its position. Notably, in *BankAtlantic v. Blythe Eastman Paine Wenner,* 12 F.3d 1045, 1048 (11th Cir. 1994), the sanctioned party had violated the court's July 25, 1988 discovery order. Likewise, in *McLeod, Alexander, Powell & Apffel, P.C. v. Quarels,* 894 F.2d 1482 (5th Cir. 1990), the sanctioned party violated an order requiring completion of discovery by a date certain. Rule 37(b) requires the violation of a *court order*. No such order has been violated here.

Modavox also argues that the Court should award its costs and attorneys' fees incurred in preparing the Original Sanctions Motion and its New Sanctions Motion. Modavox no longer states that it relies on Rule 37(a)(5) for this requested sanction as it did in its original motion, but where, as here, Modavox did not file a motion to compel, but rather a motion for sanctions, Rule 37(a)(5) is inapplicable and cannot support such a sanction. Rather, TACODA is the party that has incurred unreasonable costs and expenses in responding to Modavox's incessant demands for cumulative and irrelevant documentation and now two baseless sanctions motions. TACODA, not Modavox, should be awarded its costs and attorneys' fees.

## VI.  **CONCLUSION**

For the foregoing reasons, TACODA requests that the Court deny Modavox's New Sanctions Motion.

Dated: New York, New York
      May 14, 2010

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP


By:     /s/ Clifford R. Michel
           Clifford R. Michel (CM 9135)

Paul R. Gupta (PG 3139)
Clifford R. Michel (CM 9135)
W. Benjamin Tabler (WT 4418)
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone: 212-506-5000
Facsimile: 212-506-5151

Attorneys for Defendant
    TACODA, INC.