David R. Shaub (California SBN 032322) (admitted *pro hac vice*)
Lisbeth Bosshart (California SBN 201822) (admitted *pro hac vice*)
Stephen D. Morgan (California SBN 239345) (admitted *pro hac vice*)
SHAUB & WILLIAMS LLP
12121 Wilshire Boulevard, Suite 205
Los Angeles, CA 90025-1165
(310) 826-6678; (310) 826-8042  (fax)
lawfirm@sw-law.com

David Rosenbaum
ROSENBAUM & SILVERT, P.C.
1480 Techny Road
Northbrook, IL 60062
(847) 770-6000; (847) 770-6006 (fax)
drosenbaum@biopatentlaw.com

Jay A. Bondell (S.D.N.Y. Bar No. JB8521)
LADAS & PARRY LLP
26 West 61st Street
New York, NY 10023
(212) 708-1800; (212) 246-8959 (fax)
jbondell@ladas.com

Attorneys for Plaintiff Augme Technologies, Inc., a Delaware Corporation

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AUGME TECHNOLOGIES, INC., a Delaware corporation,<br><br>           Plaintiff,<br><br>v.<br><br>TACODA, Inc., a Delaware Corporation;<br><br>           Defendants. | CASE NO.  1:07-cv-07088-CM-GWG<br><br>**NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT JOINING CLAIMS AGAINST AOL, INC. BASED UPON FRAUD AND INEQUITABLE CONDUCT, AND REQUEST TO AMEND THE SCHEDULING ORDER; MEMORANDUM OF AUTHORITIES AND DECLARATIONS OF DAVID R. SHAUB, ESQ. AND LISBETH BOSSHART, ESQ. IN SUPPORT THEREOF**<br><br>**[F.R.C.P. 15]**<br><br>Before: Honorable Judge Colleen McMahon<br>Filed: May 17, 2010<br>Trial: None Set |

SHAUB & WILLIAMS LLP
12121 WILSHIRE BLVD. STE. 205
LOS ANGELES, CA 90025
(310) 826-6678 FAX (310) 826-8042
LAWFIRM@SW-LAW.CM

1

# TABLE OF CONTENTS

2

Table of Contents...................................................................................i

3

Table of Authorities.............................................................................iii

4

Notice of Motion..................................................................................v

5

Memorandum of Points and Authorities................................................1

6

I.      Statement of Facts.....................................................................1

7

        A. Prior Motion to Sever and Plaintiff's Opposition Thereto.................2

8

        B. The Merger Agreement.........................................................3

9

        C. Recent Discoveries Evidencing the Transfer of Tacoda into a Mere Shell............4

10

        D. Instead of Remaining a Wholly Owned Subsidiary of AOL, Tacoda
           Has Become a Mere Division of AOL.......................................7

11

        E. AOL Must be Joined to Avoid Fraud and Injustice to Augme..........8

12

II.     Plaintiff Should be Permitted to Amend its Complaint.......................9

13

        A. Legal Standard Governing Motions for Leave to Amend
           Complaint...........................................................................9

14

15

            1.  Defendants Will Not Be Prejudiced by Plaintiff Filing Its
                Second Amended Complaint...............................................10

16

17

            2.  Augme Did Not Unduly Delay in Bringing Its Amendments,
                And the Amendments Are Not Brought in Bad Faith...............11

18

19

            3.  The Amendments to the Complaint are not Futile...............12

20

        B. Joinder of Claims and Parties..............................................12

21

            1.  Joinder of Claims.........................................................12

22

            2.  Joinder of Parties.........................................................14

23

        C.  There are Facts Sufficient at the Pleading Stage to Support the
            New Theories of Liability....................................................15

24

            1.  Alter Ego Liability........................................................15

25

            2.  De Facto Merger Under Successor Liability.......................17

26

            3.  Uniform Fraudulent Conveyance Act..............................19

27

28

SHAUB & WILLIAMS LLP
12121 WILSHIRE BLVD, STE 205
LOS ANGELES CA, 90025
(310) 826-6678 FAX (310) 826-8042
LAWFIRM@SW-LAW.COM

i

**MOTION FOR LEAVE TO FILE SECOND
AMENDED COMPLAINT**

a.  AOL's Transfer of Tacoda's Assets to Itself From 2007 to Mid-2009 Amounted to Constructive Fraud..................................................19

i.  Fair Consideration...........................................................20

ii.  Insolvency...................................................................20

b.  AOL's Transfer of Tacoda's Assets to Itself From 2007 to Mid-2009 Amounted to Actual Fraud....................................................21

III.   Conclusion.......................................................................22

SHAUB & WILLIAMS LLP
12121 WILSHIRE BLVD., STE 205
LOS ANGELES CA, 90025
(310) 826-6678 FAX (310) 826-8042
LAWFIRM@SW-LAW.COM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

# TABLE OF AUTHORITIES

**Cases**:

*A.J. Heel Stone, L.L.C. v. Evisu Int'l*, S.R.L., 03 Civ. 1097, 2006 U.S. Dist. LEXIS 34152 (S.D.N.Y. 2006)……………………………………………………………………………...21

*Ansam Ass'n. v. Cola Petroleum, Ltd.*, 760 F.2d 442 (2d Cir. 1985)……………………...11

*CBS, Inc. v. Ahem*, 108 F.R.D. 14, 18 n.4 (S.D.N.Y. 1985)……………………………………9

*Cargo Partner AG v. Albatrans, Inc.*, 352 F. 3d 41 (2d. Cir. 2003)…………………………18

*Crowthers McCall Pattern, Inc. v. Lewis*, 129 Bankr. 992 (S.D.N.Y. 1991)………………...19

*Donald Dean & Sons, Inc. v. Xonitek Systems Corp.*, 656 F. Supp. 2d 314 (N.D.N.Y. 2009)…21

*Ellis v. All Steel Construction, Inc.*, 389 F.3d 1031 (7th Cir. 2004)……………………………13

*Fitzgerald v. Fahnestock & Co., Inc.*, 286 A.D.2d 573 (2001)……………………………17, 18

*Foman v. Davis*, 371 U.S. 178 (1962)……………………………………………………….9, 10

*Hanlin v. Mitchelson*, 794 F.2d 834 (2d Cir. 1986)……………………………………………11

*H.C. Cook Co. v. Beecher*, 217 U.S. 497 (1910)………………………………………………13

*Health-Chem Corp. v. Barker*, 915 F.2d 805 (2d Cir. 1990)…………………………………12

*MFS/Sun Life Trust-High Yield Series v. Van Dusen Airport Services Co.*, 910 F. Supp. 913 (S.D.N.Y. 1991)…………………………………………………………………...19-21

*Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209 (9th Cir. 1988)…………………………………12

*Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260 (D.Del. 1989)………………………15

*Peacock v. Thomas*, 516 U.S. 349 (1996)……………………………………………………12-14

*Ragin v. Harry Macklowe Real Estate Co.*, 126 F.R.D. 475 (S.D.N.Y. 1989)………………12

*Richardson Greenshields v. Mui-Hin Lau, et al.*, 825 F.2d 647, 653 n.6 (2d Cir. 1987)……………………………………………………………………………………11

*Societe Anonyme Dauphitex v. Schoenfelder Corp. et al.*, 2007 U.S. Dist. LEXIS 81496……..18

*SRI International, Inc. v. Internet Systems, Inc.*, 2005 U.S. Dist. LEXIS 6797 at *11-12……..14

*Sweatland v. Park Corp.*, 181 A.D.2d 243 (1992)………………………………………17, 19

SHAUB & WILLIAMS LLP
12121 WILSHIRE BLVD. STE 205
LOS ANGELES CA, 90025
(310) 826-4678 FAX (310) 826-8042
LAWFIRM@SW-LAW.COM

MOTION FOR LEAVE TO FILE SECOND
AMENDED COMPLAINT

**Statutes and Other Law**:

28 U.S.C. § 1367(a)......................................................................12

Fed. R. Civ. P. 15....................................................................9, 11

Fed. R. Civ. P. 16(b)(4)...............................................................10

Fed. R. Civ. P. 19(a)(1)(A)...........................................................14

Fed. R. Civ. P. 20(a)....................................................................14

1 James Wm. Moore et al., Moore's Federal Practice, § 15.3[2][b]................10

*N.Y. Debt. & Cred. Law §§ 270-281*..........................................19-21

Uniform Fraudulent Conveyance Act...................................10, 15, 19

SHAUB & WILLIAMS LLP
12121 WILSHIRE BLVD. STE 205
LOS ANGELES CA, 90025
(310) 826-6678 FAX (310) 826-8042
LAWFIRM@SW-LAW.COM

**MOTION FOR LEAVE TO FILE SECOND
AMENDED COMPLAINT**

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that Plaintiff Augme Technologies, Inc. now moves this Court, before the Honorable Judge Colleen McMahon, at the above-referenced location of 500 Pearl Street, New York, NY 10007, for leave to allow Augme to file a Second Amended Complaint.

This motion is made pursuant to Fed. R. Civ. P. 15 on the ground that new facts occurring and/or discovered after Augme filed its First Amended Complaint on September 11, 2007 compel Augme to file this Second Amended Complaint based upon recent due diligence relating to Augme's patent infringement claims. Augme now seeks to add AOL Inc. as a defendant based upon evidence supporting alter ego liability, successor liability and fraudulent conveyance of assets to avoid inequitable results for Augme. This motion is also made under Fed. R. Civ. P. 16(b)(4), which states that a scheduling order may be modified when good cause is present and with the judge's consent. As will be shown, such good cause does exist to amend and Augme respectfully requests that this Court grant Augme's request to amend.

This motion is based on the notice of motion, memorandum of points and authorities, declarations of David R. Shaub, Esq. and Lisbeth Bosshart Merrill, Esq., documents herein and on such oral and documentary evidence presented at a hearing on the motion, if so requested by the Court. The exhibits to this motion are offered to show a reasonable basis for Augme's request to amend and are not intended to be exhaustive in proving AOL's liability.

A notice of the filing of this Motion for Leave to File Second Amended Complaint ("Motion") has been filed concurrently with Judge Sweet before which is pending the matter of *Augme v. AOL, Inc. et al.*, case no. 09 Civ. 04299 (RWS). Upon the granting of this Motion, Augme shall file with Judge Sweet a request to modify the stay of proceedings against AOL, Inc. A true copy of that stay is attached hereto as Exhibit A.

Dated: May 17, 2010

SHAUB & WILLIAMS LLP

David R. Shaub,
Attorneys for Plaintiff,
**AUGME TECHNOLOGIES, INC.**

SHAUB & WILLIAMS LLP
12121 WILSHIRE BLVD, STE 205
LOS ANGELES CA, 90025
(310) 826-6678 FAX (310) 826-8042
LAWFIRM@SW-LAW.COM

v

MOTION FOR LEAVE TO FILE SECOND
AMENDED COMPLAINT

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

In the present litigation, Plaintiff Augme Technologies, Inc., formerly Modavox, Inc. ("Augme" or "Plaintiff"), has alleged that Defendant Tacoda, Inc. ("Tacoda") has infringed its '691 and '636 patents. In a separate action pending before Judge Sweet, Augme has alleged, among other things, that Defendants AOL Inc. ("AOL"), Time Warner, Inc. ("Time Warner"), and Platform-A, Inc. ("Platform-A") have also infringed its '691 and '636 patents. In 2008 and up until recently in 2009, Augme counsel engaged in countless meet and confers with opposing counsel in the Tacoda action relating to its document productions and spent many hours and incurred substantial cost on the filing and refilling of a motion for spoliation of source code and related data, which is now pending before Magistrate Judge Gorenstein. Augme has sought to focus these efforts on Tacoda's infringement of its claims for the period of 2004 through 2008. It has done so as a result of its belief that Tacoda was still a viable entity capable of being a party to this litigation. This belief was held due to statements and actions of Tacoda and AOL and its attorneys, which portrayed Tacoda as a wholly-owned subsidiary of AOL, and also as a result of the lack of available information about the AOL-Tacoda relationship resulting from a seriously delayed document production by Tacoda. The result was that Augme was lulled, to its detriment, into vigorously pursuing its case solely against Tacoda, separate and apart from its case against AOL, thus creating unnecessary inefficiencies, costs and burdens for Augme as well as the courts overseeing the two separately pending matters. Now it has been found by Augme counsel that Tacoda, no longer a corporation, is but a mere shell company with no apparent assets on hand in order to satisfy any judgment against it. Further, Augme has a firm belief based upon recent evidence that AOL has been dominating Tacoda more and more during almost the entire time this action has been pending and has become the alter ego of Tacoda, that Tacoda has been merged de factor into AOL and that AOL has committed constructive fraud by its transfer of Tacoda's assets to itself.

SHAUB & WILLIAMS LLP
12121 WILSHIRE BLVD. STE 205
LOS ANGELES CA, 90025
(310) 826-6678 FAX (310) 826-8042
LAWFIRM@SW-LAW.COM

MOTION FOR LEAVE TO FILE SECOND
AMENDED COMPLAINT

## A.   <u>Prior Motion to Sever and Plaintiff's Opposition Thereto</u>.

On July 28, 2009, AOL LLC filed a Motion to Sever Claims Pursuant to Federal Rule of Civil Procedure 21 before Judge Sweet ("Motion to Sever").  On August 11, 2009, Augme filed its opposition to such motion ("Opposition to Motion to Sever").  (Shaub Decl. ¶ 2.) Augme's motivation for opposing consolidation of the AOL and Tacoda actions was that, procedurally speaking, the claims construction in the Tacoda case was in the final stages, the hearing on that claims construction had already taken place, final infringement contentions were due shortly thereafter, a discovery cut-off date had been set, and so on.  (Ex. 1 at 5-6, Opposition.)[1]  In the AOL case, on the other hand, everything was in the beginning stages, no discovery or other cutoff dates had been set, and an inconsequential amount of documents had been provided by both sides.  Augme felt that delaying the Tacoda case by waiting for severance of the trademark and patent claims in the AOL case, and then a subsequent consolidation of Tacoda and AOL's patent claims in the Tacoda action, would be prejudicial to Augme.  In addition, at the time of the filing of Augme's Opposition to Motion to Sever, it was thought that the two cases would involve entirely different issues, evidentiary inquiries, and damages calculations.  (Ex. 1 at 13.)  In addition, Augme was under the belief that the infringing code was not the same for the two companies and thus the patent infringement claims would not be the same.  (Id. at 16.)

Since that time, however, two significant events have disproved Augme's intial beliefs. First, Augme counsel concluded this Court has been logically awaiting the U.S. Supreme Court decision in the *Bilski* case before incorporating its impact into the remaining claims construction in this case of a method for adding function to a web page.  During this extended latent period, much more effort has been expended by Augme counsel to bring the pending Motion for Sanctions for Spoliation of Evidence and Evasive Disclosure Practices before Magistrate Judge Gorenstein.  In addition, equally time-consuming efforts have been made to

---

[1] Each exhibit in this motion will have the relevant portions thereof highlighted or will be spot cited for the Court's convenience.

**MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

SHAUB & WILLIAMS LLP
12121 WILSHIRE BLVD. STE 205
LOS ANGELES CA, 90025
(310) 826-6678 FAX (310) 826-8042
LAWFIRM@SW-LAW.COM

obtain further document productions – the largest consisting of 6 million pages of documents in February 2010.

What has gradually come to light over the past year as a consequence of the above efforts, and that has made Augme reconsider and change its previous position expressed in the severance and consolidation proceedings, is that in deploying Tacoda's technology onto Platform-A, AOL appeared to be deconstructing Tacoda at the same time. Through searches of AOL's productions of hundreds of thousands of documents, continued searches for missing Tacoda documents, gaps in financial statement productions by Tacoda, on-line searches, review of corporate records, and so on, Augme has a reasonable basis to believe that AOL has become the alter ego of Tacoda and that Tacoda is a mere shell company as a result of the fraudulent conveyance of its assets from Tacoda to, and de facto merger with, AOL.

In addition, great strides have been made in regard to discovery relating to AOL. Augme has conducted much of that discovery in this action and depositions are to ensue shortly of former and present AOL executives. Further, the parties in the Tacoda case are still awaiting the final claims construction ruling dependent on the *Bilski* decision. Thus, at this point in time, it is apparent that the Tacoda and AOL cases have become more procedurally aligned and the issues have become more streamlined as the result of the new information that has come to light in regards to the relationship between AOL and Tacoda.

As a result of the foregoing, Augme now takes the position that AOL must be added as a party to the Tacoda action for Augme to fully and fairly pursue its rights before this court.

**B. The Merger Agreement.**

For over a year, Augme's counsel had sought documents that were responsive to its First Request for Production of Documents dated June 6, 2008. As to the form of production, the requests specifically requested, among other things, that: "Electronically stored information shall be produced in its native format...." In addition, on or about July 8, 2008, pursuant to the requirements of Judge McMahon's e-discovery disclosures order, the parties met and conferred regarding the form of electronic discovery and agreed that the documents would be produced in TIFF as well as native formats so that the files' metadata would be available and the files would

SHAUB & WILLIAMS LLP
12121 WILSHIRE BLVD. STE 205
LOS ANGELES CA, 90025
(310) 826-6678 FAX (310) 826-8042
LAWFIRM@SW-LAW.COM

MOTION FOR LEAVE TO FILE SECOND
AMENDED COMPLAINT

be searchable. Tacoda repeatedly failed to comply with this agreement. (Bosshart Decl. ¶ 2.) As to the documents themselves, Augme sought, among other things, all documents related to AOL's acquisition of Tacoda, the structure of which remained unknown until this year. (Id., Ex. 2, Request Nos. 22-24.) Following extensive meet and confers with Tacoda counsel, Tacoda produced 6 million pages of documents on February 19, 2010. (Bosshart Decl. ¶ 3; Ex. 3.) In that production, Augme finally received a document directly relating to the acquisition - the Merger Agreement ("Merger Agreement"). This document is obviously extremely relevant to this case, but was not produced until February 2010 after a prolonged meet and confer which was a prelude to a motion to compel. (Bosshart Decl. ¶ 3; Ex. 4, Merger Agreement.)

Now, with the benefit of having finally seen the AOL-Tacoda Merger Agreement, Augme understands that this agreement was entered into between AOL and Tacoda on July 23, 2007 and that a wholly-owned subsidiary of AOL merged into Tacoda, Inc. with Tacoda, Inc. emerging as the surviving company. (Ex. 4.) The result was that, as the survivor, Tacoda, Inc. would continue its existence under Delaware law as a wholly-owned subsidiary of AOL thereby continuing its separate operations. (Shaub Decl. ¶ 3; Ex. 4 at section 1.1.) In August 2007, shortly after this Merger Agreement was entered into, Augme filed its action against Tacoda, Inc. In Augme's First Amended Complaint it was alleged, and in Tacoda's answer it was admitted, that "Tacoda, Inc. is a Delaware corporation." (Ex. 5, First Amended Complaint, section 2; Answer, section 2.) This admission has never been amended or corrected. (Shaub Decl. ¶ 4.)

**C.    Recent Discoveries Evidencing the Transformation of Tacoda into a Mere Shell**.

Instead of AOL maintaining its announced course of conduct to treat Tacoda as a separate wholly-owned subsidiary (Shaub Decl. ¶ 5; see Exs. 6, 7, 8), it effectively began to shut down Tacoda and by 2008 began treating Tacoda as a mere "division" of AOL. This maneuver by AOL is evidenced by AOL's transfer between 2008 and 2009 of virtually all Tacoda's customers, technology, sales, revenues, cash and key personnel to either AOL or its other division in existence at the time, Platform-A (which is currently conducting business under the name Advertising.com). (Shaub Decl. ¶ 5.)

SHAUB & WILLIAMS LLP
12121 WILSHIRE BLVD. STE 205
LOS ANGELES, CA. 90025
(310) 826-6678 FAX (310) 826-8042
LAWFIRM@SW-LAW.COM

4

SHAUB & WILLIAMS LLP
12121 WILSHIRE BLVD. STE 205
LOS ANGELES CA, 90025
(310) 826-6678 FAX (310) 826-8042
LAWFIRM@SW-LAW.COM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

With respect to Tacoda's customers, Tacoda publisher Web sites were searched using search terms based upon code found earlier in claim charts prepared in 2007 and 2008. Previously, Augme experts had viewed Web sites containing Tacoda embedded JavaScript Data Tags showing code retrieved from a Tacoda server. But by May 2009, only remnants of Tacoda code was found on Web sites that were then no longer functioning. Late in 2009, another search revealed that "an.tacoda.net," a server address found in code retrieved from a Tacoda server, was actually registered to AOL. The claim charts prepared in September 2008, which were initiated by Augme, as a supplemental due diligence study showed some deployment by AOL, but in the charts also showed at that time that Tacoda, Inc. appeared to continue to be a separate viable corporate provider of behavioral targeting as seen from the running code. Instead, recent document discoveries (e.g., Ex. 9 at 2, 10) and depositions of former Tacoda employees taken by Augme counsel in the past several months disclosed that Tacoda customers have been converted to AOL customers, and its key personnel have been used to accomplish the purpose of integration of Tacoda's technology into AOL, after which the key personnel were either terminated or they resigned. (Shaub Decl. ¶ 5(a).)

Concerning the transfer of technology to AOL, Augme has now reviewed dozens of documents dated in 2008 and 2009, obtained either from an AOL document production in 2009 or a 6 million page production in February 2010 that contains discussions relating to such transfer. Further, the original Tacoda technology seen in claim charts prepared in August 2007 by Augme's experts has been transferred completely to AOL and then redeployed among its divisions. This occurrence was discovered by Augme's counsel during its work on the revised spoliation motion filed in April 2010. (Shaub Decl. ¶ 5(b).)

As for sales, this past March Augme deposed Anne Hunter, former V.P. of Revenue Operations for Tacoda. Ms. Hunter oversaw the ad operations staff for the Tacoda Audience Networks (TAN), the ad delivery system used by Tacoda when it was acquired in 2007, and also the sales development staff for TAN. When Tacoda was acquired by AOL she said that after several months she became a full-time employee of AOL working in the Platform-A division until she was laid off in May 2009. (Shaub Decl. ¶ 5(c); Exs. 10 at second page, 22.)

MOTION FOR LEAVE TO FILE SECOND
AMENDED COMPLAINT

In further investigations of the whereabouts of former key engineers and executives of Tacoda, Augme has found that every single one it wished to potentially depose had been transferred to Platform-A by AOL and later were laid off or terminated, including David Morgan, the founder and chairman, Curt Viebranz, the CEO, Mark Pinney, the CFO, Allison Lowery, VP of Engineering, Joseph Wilson, Chief Science Officer, and the key engineers that designed the Tacoda TAN system and worked on it in operation.  In the last few months Augme has not been able to authenticate many key documents that lack dates due to lack of metadata because the authors are no longer employed by AOL.  (Shaub Decl. ¶ 5(d).)

Most importantly, Augme has sought financial information and statements of Tacoda, Inc. for the past year (Bosshart Decl. ¶ 4; Ex. 2, Request Nos. 25-30, 37, 41; Ex. 11 at 4; Ex. 12), particularly for the years after 2006, since Augme's extensive searches of Tacoda productions had only turned up financials through 2006.  Between October 13, 2008 and August 19, 2009 Augme received approximately 1.5 million pages of documents on 15 DVDs and 3 hard drives which were searched but were found to contain no financial statements for Tacoda, Inc. after 2006.  (Shaub Decl. ¶ 6.)  In January 2010, Augme received a supplemental response to its First Set of Interrogatories which disclosed that Tacoda's damages expert had been provided with financial statements of Tacoda, Inc. to support her opinions that ranged from April 2005 to June 2007 and ended at that point, which is around the time the Merger Agreement was entered into.  (Id.; Ex. 13.)  After receipt in February 2010 of 3 more hard drives containing over 6 million documents and source code files, Augme was still not provided with Tacoda financial statements.  But what Augme did find was evidence of substantial Tacoda revenue that was being treated as AOL revenue.  This was found in an internal audit.  (Shaub Decl. ¶ 7; Ex. 9 at 1, Advertising Sales and Key Tacoda Systems.)  Based upon the evidence Augme has seen, beginning in 2007 around the filing of this suit, Tacoda's revenue has been directly distributed to and reported by AOL.

SHAUB & WILLIAMS LLP
12121 WILSHIRE BLVD. STE 205
LOS ANGELES CA, 90025
(310) 826-6678 FAX (310) 826-8042
LAWFIRM@SW-LAW.COM

**MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

### D. **Instead of Remaining a Wholly Owned Subsidiary of AOL, Tacoda has Now Become a Mere Division of AOL**.

It is significant to note that until March 2009, Tacoda and AOL concealed from Augme, this Court and the Court in the separate pending AOL matter, that "Tacoda, Inc." converted its corporate form into "Tacoda LLC" in 2008 (Ex. 11 at 5 ¶ 3). This move facilitated Tacoda's purpose of being a mere revenue conduit – and would be a liability shield - with its revenue being passed-through to the owner of Tacoda LLC -- AOL. This was confirmed in the past month during review of the filings made by AOL in July 2009 relating to the spin-off from Time Warner, resulting in its becoming a new publicly traded company. At first Augme counsel did not find any mention of Tacoda, Inc. as a separate subsidiary. It was not until an Information Statement was found that contained a reference to Tacoda, Inc. as "presently Tacoda LLC" that Augme was able to put the pieces together. (Shaub Decl. ¶ 8, Ex. 14.) After Tacoda's transition, it failed to meet its obligation under Rule 7.1 to update its pleadings in this action. Instead, it continued to make filings as Tacoda, Inc. thereby representing that Tacoda, Inc. was still in existence and operating. In comparison, following AOL's spin-off from Time Warner in 2009, an amendment was filed changing AOL's name from "AOL LLC" to "AOL Inc." (Shaub Decl. ¶ 9; Ex. 15, Supplemental Disclosures.) Thus, AOL was aware of its obligation to disclose this information – it just chose not to do so in 2008 with Tacoda. While this may appear inconsequential, it was not until March 2009 that Augme learned of this change, and it was not until May 2010 that Augme learned from a review of AOL's spin-off filings, that there was no treatment of Tacoda as a separate operating entity.

It was not until mid-2009 that Orrick counsel, Paul Gupta, disclosed to Augme's counsel that, in fact, since the end of 2008 Tacoda had essentially been in the process of being shut down. In the past several months Augme has found ample evidence that Tacoda is now actually a mere division of AOL. (Shaub Decl. ¶ 10; Exs. 16, 17, 18, 19 at 6, 8, 12, 15, 16.) This is a scenario never contemplated by Augme. When this suit was filed, Augme was under the impression due to AOL's public pronouncements that Tacoda would continue to provide its own services, operating as a separate entity. Bit-by-bit, however, as Augme obtained previously concealed or missing pieces of key evidence this façade has been stripped away.

SHAUB & WILLIAMS LLP
12121 WILSHIRE BLVD, STE 205
LOS ANGELES CA, 90025
(310) 826-6678 FAX (310) 826-8042
LAWFIRM@SW-LAW.COM

**MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

Among other things (see supra at Section C), announcements by AOL have identified that Platform-A, a "separate corporation," would also deploy Tacoda's targeting technology and, in addition, original Tacoda technology has been transferred completely to AOL and then redeployed among its divisions, completely negating the idea of Tacoda remaining a separate entity. The reality is that the Merger Agreement and the accompanying corporate formalities have been completely disregarded.  Indeed, the notion that Tacoda is a separate entity is nothing but a sham, obliterating the idea that Tacoda remains a separate entity capable of defending in this action.

### E.   **AOL Must be Joined to Avoid Fraud and Injustice to Augme**.

In November 2009 Augme took its spoliation motion off calendar without prejudice to its being refiled when, among others things, Tacoda's counsel disclosed that AOL had repositories of Tacoda source code on hand that it had not produced.  Subsequently, there was an extensive review of the contents of these repositories by Augme counsel and experts.  It was then discovered that, among other things, virtually all of the spoliation of source code and related data that occurred after the filing of this action in August 2007 was the result of actions taken by AOL.  (Shaub Decl. ¶ 11; Ex. 20.)  Therefore, any rulings arising from the pending motion before Magistrate Judge Gorenstein necessarily should bind AOL as well as Tacoda.

As a direct consequence of the above-mentioned discoveries, only one conclusion can be reached: Augme has been chasing a corporate shell under the guise of "Tacoda, Inc.," a "company" that has been completely subsumed into AOL.  AOL has been perpetrating the "Tacoda fiction" for the obvious dual purpose of shielding AOL from Tacoda liabilities and, at the same time, utilizing its technology and goodwill.  A great fraud and injustice would be worked on Augme if it were to establish infringement by Tacoda for the alleged infringement period, which reaches beyond the date of acquisition of Tacoda by AOL, only to find that, first, after the acquisition it was AOL and not just Tacoda that was infringing by its using Tacoda as a mere division and, second, that Tacoda is now a mere shell with no assets to settle any judgment against it, whereby AOL is actually the alter ego of Tacoda liable under successor

SHAUB & WILLIAMS LLP
12121 WILSHIRE BLVD. STE 205
LOS ANGELES CA, 90025
(310) 826-6678 FAX (310) 826-8042
LAWFIRM@SW-LAW.COM

**MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

liability and for fraudulent transfer of Tacoda's assets until sometime in 2009 when the absorption of Tacoda was complete.

Due to the foregoing, Augme moves for leave to file its Second Amended Complaint. As shown herein, allowing Augme such leave will afford Augme the opportunity to have its claims fully adjudicated and is neither futile nor brought in bad faith. Further, allowing Augme to file this Second Amended Complaint will not cause undue delay and will not prejudice defendants. Accordingly, leave to amend should be granted.

## II.

## PLAINTIFF SHOULD BE PERMITTED TO AMEND ITS COMPLAINT

### A.    Legal Standard Governing Motions for Leave to Amend Complaints.

Federal Rule of Civil Procedure 15(a) provides that after an answer has been filed, a plaintiff may amend a complaint by leave of the court. It further states that such leave "shall be freely given when justice so requires." Augme now seeks to add AOL, Inc. as a defendant based upon alter ego liability, successor liability and fraudulent conveyance of assets to avoid inequitable results for Augme.

The U.S. Supreme Court in *Foman v. Davis*, 371 U.S. 178, 182 (1962) held that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason...the leave sought should, as the rules require, be 'freely given.'" This liberal policy favoring amendments is based largely upon the policy of having "'decision on the merits, rather than on the pleadings or technicalities.'" *CBS, Inc. v. Ahem*, 108 F.R.D. 14, 18 n. 4 (S.D.N.Y. 1985) (citing *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981), (citing *Conley v. Gibson*, 355 U.S. 41, 47-48 n. 9, 2 L. Ed. 2d 80, 78 S.Ct. 99 (1957)).

Pursuant to the Scheduling Order in this case, all applications to amend pleadings or amendments as of right were to be made, and any additional parties joined, by April 21, 2008. While this is a date set in the Scheduling Order, Augme was not aware of the facts as recited above until very recently due to new evidence found and depositions undertaken. Under Fed.

SHAUB & WILLIAMS LLP
12121 WILSHIRE BLVD, STE 205
LOS ANGELES CA, 90025
(310) 826-6678 FAX (310) 826-8042
LAWFIRM@SW-LAW.COM

**MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

R. Civ. P. 16(b)(4), a schedule may be modified when good cause is present and with the judge's consent. Augme firmly believes that through the facts set forth above and the law put forth below, good cause is shown to allow such a modification and respectfully requests that this Court utilize the liberal policy granted to it under the law to allow Augme to amend.

Leave to amend should only be denied if the opposing party makes a showing of undue prejudice, bad faith, or dilatory motive on the part of the moving party. Absent such circumstances, a court abuses its discretion in denying leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The most common reasons for denying leave to amend are prejudice, delay, and futility, none of which are applicable here. 1 *James Wm. Moore et al., Moore's Federal Practice*, § 15.3[2][b].

## 1. Defendants Will Not Be Prejudiced by Plaintiff Filing Its Second Amended Complaint.

Augme's Second Amended Complaint adds causes of action for alter ego liability, successor liability, and liability under the Uniform Fraudulent Conveyance Act. Defendants will not be prejudiced by Augme's additions to its complaint since Tacoda is merely a shell company and AOL has already been named in a separate pending action. In addition, no trial date, discovery cutoff date, or any other such dates have been set. Thus, while discovery on Augme's side in regard to Tacoda and AOL is almost complete, Defendants have ample time to investigate Augme's claims in preparation for trial as they are the ones most knowledgeable about the facts relating to the new theories of liability. Indeed, in AOL's unsuccessful motion to sever the patent claims before Judge Sweet it stated that the patent claims "are nearly identical" to the claims asserted here and that:

> consolidation of the severed claims with those in the related prior action would conserve judicial resources, obviate duplicative discovery, and avoid the possibility of inconsistent rulings. (Ex. 21 at 1.)

This is consistent with the source code and technical documents studied while working on the recently filed spoliation motion. (Shaub Decl. ¶ 12.) Accordingly, AOL argued the patent claims against it belonged in this action. (Ex. 21 at 2 last ¶, 5, 10.) AOL further stated that Tacoda's technology was "now incorporated into the Platform-A system." (Id. at 11.)

**MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

SHAUB & WILLIAMS LLP
12121 WILSHIRE BLVD. STE 205
LOS ANGELES CA, 90025
(310) 826-6678 FAX (310) 826-8042
LAWFIRM@SW-LAW.COM

1

2

### 2.   Augme Did Not Unduly Delay in Bringing Its Amendments, and The Amendments Are Not Brought in Bad Faith.

There is no time limit on motions to amend, and leave may be sought at any stage of the litigation. *See F.R.C.P.* 15(b). It is well-established in the Second Circuit that "mere delay, . . . absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend.'" *Richardson Greenshields v. Mui-Hin Lau, et al.*, 825 F.2d 647, 653 n. 6 (2d Cir. 1987)(quoting *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)). Even when the motion to amend occurs on the eve of trial and could have been raised previously, parties have been permitted to amend the complaint. *See Hanlin v. Mitchelson,* 794 F.2d 834 (2d Cir. 1986). Any prejudice resulting from the relative lateness of this amendment would have to be substantial, such as an amendment after the time for discovery had expired and where the new claims were based on different operative facts. *Ansam Ass'n. V. Cola Petroleum, Ltd.*, 760 F. 2d 442 (2d Cir. 1985).

The additional claims of alter ego, successor liability and fraudulent conveyance that are being added by Augme in the Tacoda action are based on the exact same set of operative facts. The underlying cause of action is still patent infringement. Now, however, Augme has learned that Tacoda is but a mere shell and that it will be prejudiced if it is not able to hold the correct party liable for such infringement. Thus, based on the new information Augme has learned as the result of recently found evidence, Augme now has a reasonable basis to put forth these new theories in an effort to hold AOL accountable for the liability under the causes of action already set out in Augme's First Amended Complaint against Tacoda.

Since this information is newly discovered there has not been any undue delay in Augme's desire to amend its complaint. In addition, no trial date, discovery cutoff date, or any other such final dates have been set. Thus, Augme's Second Amended Complaint would be filed in the middle of this action, not right before trial or at some point in time at which delay may be at issue. As such, Augme did not unduly delay in the filing of this amended complaint, but instead responded promptly to the new information discovered and proceeded in good faith to file a motion for an amended complaint based upon these new findings.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SHAUB & WILLIAMS LLP
12121 WILSHIRE BLVD. STE 205
LOS ANGELES CA, 90025
(310) 826-6678 FAX (310) 826-8042
LAWFIRM@SW-LAW.COM

11                     MOTION FOR LEAVE TO FILE SECOND
                       AMENDED COMPLAINT

### 3.    The Amendments to the Complaint Are Not Futile.

A court should deny leave to amend a pleading when the proposed amendment clearly is frivolous or advances a claim that is legally insufficient on its face. *See e.g., Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990). In addressing whether an amendment will be futile, "an inquiry must be made comparable to that required by Fed. R. Civ. P. 12(b)(6);" *Ragin v. Harry Macklowe Real Estate Co.*, 126 F.R.D. 475, 478 (S.D.N.Y. 1989). Thus, the Court must construe the facts alleged by the moving party as true and "[a] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F. 2d 209, 214 (9th Cir. 1988).

As will be shown below, Plaintiff has found and can set forth evidence that lays a valid and sufficient basis to allege the claims of alter ego, successor liability and fraudulent conveyance against AOL. The new causes of action have been well-researched and the allegations are legally sufficient to support it. As such, the amendments to the complaint are not futile.

### B.    Joinder of Claims and Parties.

#### 1.    Joinder of Claims.

Under 28 U.S.C. § 1367(a), in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the U.S. Constitution. As stated in *Peacock v. Thomas*, ancillary jurisdiction (now named supplemental jurisdiction) may extend to claims having a factual and logical dependence on "the primary lawsuit," but that primary lawsuit must contain an independent basis for federal jurisdiction. 516 U.S. 349, 355 (1996). The court must have jurisdiction over a case or controversy before it may assert jurisdiction over ancillary claims. *Id.* The basis of the doctrine of ancillary jurisdiction is the practical need "to protect legal rights or effectively to resolve an entire, logically entwined lawsuit." *Id.*

SHAUB & WILLIAMS LLP
12121 WILSHIRE BLVD, STE 205
LOS ANGELES CA, 90025
(310) 826-6678 FAX (310) 826-8042
LAWFIRM@SW-LAW.COM

**MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

In the *Peacock* case, the Supreme Court found that plaintiff's veil-piercing claim did not state a cause of action under his ERISA claim and could not independently support federal jurisdiction. *Id.* at 354. The plaintiff in that case could only invoke the jurisdiction of the federal courts by independently alleging a violation of ERISA – thus, there needed to be some federal right violated in order for plaintiff to bring in his veil piercing claim. However, courts have recognized a number of analytical distinctions that clarify and delimit *Peacock's* reach. *Ellis v. All Steel Construction, Inc.*, 389 F. 3d 1031, 1033 (7th Cir. 2004). If an alter-ego claim is asserted <u>in conjunction with</u> the underlying federal cause of action (here patent infringement), the latter may provide the basis for ancillary jurisdiction over the alter ego claim, obviating *Peacock* concerns; <u>it is only when an alter ego claim is asserted in a separate judgment-enforcement proceeding</u> that *Peacock* requires an independent basis for federal jurisdiction. *Id.* at 1033-1034; see also *Epperson v. Entm't Express, Inc.*, 242 F. 3d 100, 106 (2d Cir. 2001)(citing cases holding *Peacock* inapplicable to cases involving fraudulent conveyances).

It seems to be commonplace for federal courts to exercise jurisdiction over alter-ego or veil-piercing claims against additional defendants in conjunction with federal causes of action against primary defendants – often without hint of any jurisdictional issue. *Id.* at 1034; See, e.g., *Trustees of the Nat'l Elevator Indus. Pension, Health Benenfit & Educ. Funds v. Lutyk*, 332 F.3d 188, 191 & n.3 (3d Cir. 2003); *Worth v. Tyler*, 276 F.3d 249, 259-260 (7th Cir. 2001); *Local 159, 342, 343 & 444 v. Nor-Cal Plumbing, Inc.*, 185 F.3d 978, 985 (9th Cir. 1999); *Mass. Carpenters Cent. Collection Agency v. Belmont Concrete Corp.*, 139 F.3d 304, 305, 308 (1st Cir. 1998).

If AOL were not joined in the Tacoda suit now, Augme's only method of collecting on its judgment would be to pursue AOL under ancillary enforcement jurisdiction. However, the primary limit on the exercise of ancillary enforcement jurisdiction is that it may not be used "to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment." *Peacock v. Thomas*, 516 US at 357. In the Supreme Court case of *H.C. Cook Co. v. Beecher*, cited to in *Peacock v. Thomas*, the plaintiff (here, Augme) had obtained a judgment in federal court against a corporation that had infringed its patent (here Tacoda). 217 U.S. 497, 54 L. Ed. 855, 30 S. Ct. 601 (1910). When the plaintiff could not collect on the judgment, it sued the individual directors of the defendant corporation (here AOL), alleging that, during the

SHAUB & WILLIAMS LLP
12121 WILSHIRE BLVD, STE 205
LOS ANGELES CA, 90025
(310) 826-6678 FAX (310) 826-8842
LAWFIRM@SW-LAW.COM

pendency of the original suit, they had authorized continuing sales of the infringing product and knowingly permitted the corporation to become insolvent. The Supreme Court agreed with the Circuit Court's characterization of the suit as "an attempt to make the defendants answerable for the judgment already obtained" and affirmed the court's decision that the suit was not "ancillary to the judgment of the former suit." Thus, in order for Augme to collect on the judgment it seeks and to ensure that no prejudice befalls Augme and its ability to enforce its claims, AOL must be joined in the lawsuit against Tacoda. *Id.* at 498-499.

In the present case, there is an underlying federal cause of action of patent infringement against Tacoda and if the alter-ego, successor liability and fraudulent conveyance claims are asserted in conjunction with the underlying patent infringement cause of action, the latter will provide the basis for ancillary jurisdiction over the alter ego claim as exemplified in the cases put forth above, obviating *Peacock* concerns.

### 2.   **Joinder of Parties.**

Under Fed. R. Civ. P. 19(a)(1)(A), a person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if in that person's absence, the court cannot accord complete relief among existing parties. Further, under F.R.C.P. 20(a), defendants can be joined together if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action. In *SRI International, Inc. v. Internet Security Systems, Inc.*, the court stated that, in its experience, patents over the same technology often give rise to the same questions of law and fact (e.g., same prior art references, same level of ordinary skill in the art). 2005 U.S. Dist. LEXIS 6797 at *11-12.

In this present case, there is already a case pending against AOL in the same court before Judge Sweet. Thus, there is no question that this court has subject-matter jurisdiction over this patent litigation case since the same claims as are asserted against Tacoda are also asserted against AOL in the same court and the same transaction, occurrence, or series of transactions or occurrences has been asserted against both Tacoda and AOL. Further, as stated

SHAUB & WILLIAMS LLP
12121 WILSHIRE BLVD. STE 205
LOS ANGELES CA, 90025
(310) 826-6678 FAX (310) 826-8042
LAWFIRM@SW-LAW.COM

14

MOTION FOR LEAVE TO FILE SECOND
AMENDED COMPLAINT

above, Augme has good reason to believe that Tacoda is currently a mere shell and if Augme were to try and recover against it, there would be no assets with which Tacoda could satisfy any judgment against it.  Based upon its new findings, Augme believes in good faith that AOL has become the alter ego of Tacoda and should be found liable for any judgment against Tacoda under the theories of alter ego, successor liability and fraudulent transfer of assets. Thus, AOL must be joined in the action against Tacoda or else the court will not be able to accord complete relief to Augme if it were to prevail on its claims against Tacoda.

**C.**    **There are Facts Sufficient at the Pleading Stage to Support the New Theories of Liability.**

In most cases, the patent law is the sole basis for liability.  In some cases, however, liability may be imposed on a company for the infringing acts of its subsidiary based on corporate law theories of liability, such as agency theory, alter ego theory, and exceptions to successor liability (express or implied assumption of liabilities of predecessor, de facto merger, continuation doctrine, or fraudulent transaction).  *Manchak v. Rollins Environmental Services, Inc.*, 1996 U.S. Dist. LEXIS 20542 at * 8-9.  In this case, Augme proposes to amend its complaint to add AOL in this action as the result of its relationship with Tacoda and based upon the theories of (1) alter ego liability, (2) de factor merger under successor liability and (3) liability under the Uniform Fraudulent Conveyance Act.

**1.**    **Alter Ego Liability.**

A subsidiary corporation may be deemed the alter ego of its corporate parent where there is a lack of attention to corporate formalities, such as where the assets of two entities are commingled, and their operations intertwined, or where a corporate parent exercises complete domination and control over the subsidiary.  *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 266 (D.Del. 1989).  In addition, the alter ego theory will only hold if a corporation's use of the corporate form would, if left unchecked, work as a fraud or something in the nature of a fraud and injustice would result.  *Id.* at 267.

Augme has put forth facts in its Second Amended Complaint to support a claim for alter ego liability for AOL.  First, the assets of AOL and Tacoda have been commingled and

SHAUB & WILLIAMS LLP
12121 WILSHIRE BLVD, STE 205
LOS ANGELES CA, 90025
(310) 826-6678 FAX (310) 826-8042
LAWFIRM@SW-LAW.COM

**MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

their operations have been intertwined as has been evidenced by AOL's transfer between 2008 and 2009 of virtually all Tacoda's customers, technology, sales, revenues, cash and key personnel to either AOL or its other division in existence at the time, Platform-A (which is currently conducting business under the name Advertising.com).. Tacoda is a shell – for all practical purposes it is not in existence anymore. Even Mr. Gupta, Orrick counsel, has admitted that Tacoda is no longer in operation. Almost from the time this case was filed, AOL has not just used Tacoda's technology in conjunction with Tacoda, but rather has completely taken over the technology previously utilized by Tacoda and alleged to be infringing by Augme, and has been employing it solely for its own means. In addition, key Tacoda personnel were transferred to AOL's division, Platform-A, and Tacoda revenue has been commingled with AOL revenue since June 30, 2007.

Second, AOL has, in the past when the merger agreement between AOL and Tacoda was entered into and Tacoda was still in existence, exercised complete domination and control over Tacoda with respect to any facet of patent litigation that it was, or potentially could be, involved with. In the Merger Agreement itself, signed by Tacoda and AOL, it is stated:

> 5.2(c) "In addition, the parties agree that (i) they **have shared and will continue to share a common interest with respect to the matters at issue in all IP Claims** and accordingly that all applicable privileges and protections (including, but not limited to, the common interest privilege, joint defense privilege, attorney-client privilege and work product privilege) have applied and shall apply to all privileged information and work product exchanged between and among the parties and counsel for the parties relating to the matters at issue in any IP Claim…."

In addition, AOL has exerted such control over Tacoda by engaging the same counsel who has repeatedly isolated AOL from Tacoda as though there were a bright line between the two, and as if the only lingering purpose of Tacoda since the complete integration into AOL was to serve as a liability shield for AOL.

Lastly, Augme can prove that a fraud and injustice would be exacted upon Augme if it were not allowed to hold AOL liable under an alter ego theory of liability. Thus, for purposes of amending it complaint, Augme has put forth sufficient evidence to assert liability of AOL for the infringement actions of Tacoda under an alter ego theory of liability.

SHAUB & WILLIAMS LLP
12121 WILSHIRE BLVD. STE 205
LOS ANGELES CA, 90025
(310) 826-6678 FAX (310) 826-8042
LAWFIRM@SW-LAW.COM

16   **MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

## 2.   De Factor Merger under Successor Liability.

Under *Sweatland v. Park Corp.*, the factors for a de facto merger are: continuity of ownership, cessation of ordinary business and dissolution of the acquired corporation as soon as possible, assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation, and continuity of management, personnel, physical location, assets, and general business operation. 181 A.D.2d 243, 245-246 (Supreme Court of NY 1992).   Not all of the Sweatland elements are necessary to find a de facto merger.   *Fitzgerald v. Fahnestock & Co., Inc.*, 286 A.D.2d 573, 574-575 (Supreme Court of NY 2001).   Courts will look to whether the acquiring corporation was seeking to obtain for itself intangible assets such as goodwill, trademarks, patents, customer lists and the right to use the acquired corporation's name.   *Id*.   The concept upon which this doctrine is based is that a successor that effectively takes over a company should carry the predecessor's liability as a concomitant to the benefits it derives from the goodwill purchased.   *Id*.

The corporate law doctrine of de facto merger was developed for several reasons: to protect the seller's creditors, to assess taxes, and to protect tax interests of the buyer's dissenting shareholders.   *Sweatland v. Park Corp.*, 181 A.D.2d at 246.   In the context of an action against a successor corporation for tort liability, however, those considerations are not relevant.   "While dissenting shareholders need protection against alteration of their investment rights, tort claimants [such as Augme] need protection against attempts by ongoing businesses [such as Tacoda] to avoid liability through transfer of their operations to another legal entity [such as AOL]."   *Id*.   Public policy considerations dictate that, at least in the context of tort liability, courts have flexibility in determining whether a transaction constitutes a de facto merger.   *Id*.   While factors such as shareholder and management continuity will be evidence that a de facto merger has occurred, those factors alone should not be determinative.   *Id*.   "It is apparent from the nature of the inquiry required that the court is to make, on a case-by-case basis, an analysis of the weight and impact of a multitude of factors that relate to the corporate creation, succession, dissolution and successorship."   *Id*.

SHAUB & WILLIAMS LLP
12121 WILSHIRE BLVD. STE 205
LOS ANGELES CA, 90025
(310) 826-6678 FAX (310) 826-8042
LAWFIRM@SW-LAW.COM

17

**MOTION FOR LEAVE TO FILE SECOND
AMENDED COMPLAINT**

As Judge Sweet stated in *Societe Anonyme Dauphitex v. Schoenfelder Corp. et al.,*: "the purpose of de facto merger is to 'avoid [the] patent injustice which might befall a party simply because a merger has been called something else.'" 2007 U.S. Dist. LEXIS 81496 at *13 citing *Cargo Partner AG v. Albatrans, Inc.,* 352 F. 3d 41, 46 (2d Cir. 2003).

In this case, the reality of the situation is that the Merger Agreement and the accompanying corporate formalities have been completely disregarded and has resulted in a sham, obliterating the idea that Tacoda remains a separate entity capable of defending this action. This has led to the cessation of ordinary business of Tacoda. Instead of AOL maintaining its announced course of conduct to treat Tacoda as a separate wholly owned subsidiary, it effectively began to shut down Tacoda and by 2008 was treating Tacoda as a mere "division" of AOL. (See Supra at Section I.C.; see Exs. 6, 7, 8). This maneuver by AOL is evidenced by AOL's transfer between 2008 and 2009 of virtually all Tacoda's customers, technology, sales, revenues, cash and key personnel to either AOL or its other division in existence at the time, Platform-A (which is currently conducting business under the name Advertising.com). (See Supra at Section I.C.; Exs. 9, 10, 22.) Thus, between 2008 and 2009 Tacoda has ceased its operations as a separate entity and has been stagnant in its activities – it is AOL, instead, that has been now solely utilizing its technology. As stated in *Fitzgerald v. Fahnestock,* "so long as the acquired corporation is shorn of its assets and has become, in essence, a shell, legal dissolution is not necessary before a finding of a de facto merger will be made." 286 A.D.2d at 575.

There is also no question that AOL obtained for itself intangible assets such as goodwill, trademarks, patents, customer lists and the right to use Tacoda's name and thus continued the use of assets and general business operation of Tacoda, but for the benefit of AOL. AOL stated that Platform-A, one of its divisions, would be deploying Tacoda's patented targeting technology, recent document discoveries and depositions of former Tacoda engineers taken by Augme counsel in the past several months disclosed that Tacoda customers have been converted to AOL customers, and, through all this, AOL piggy-backed upon the goodwill built up by Tacoda before the Merger Agreement and used the value of Tacoda's name.

**MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

Lastly, Augme need not prove that all the factors under *Sweatland* have been met, as stated in the cases above. For example, while factors such as shareholder and management continuity will be evidence that a de facto merger has occurred, those factors alone should not be determinative. *Sweatland v. Park*, 181 A.D.2d at 246. It is apparent from the nature of the inquiry required that the court is to make, on a case-by-case basis, an analysis of the weight and impact of a multitude of factors that relate to the corporate creation, succession, dissolution and successorship. Thus, for purposes of amending it complaint, Augme has put forth sufficient evidence to assert liability of AOL for the infringement actions of Tacoda under a successor liability theory.

3.    **Uniform Fraudulent Conveyance Act**.

Under the New York Uniform Fraudulent Conveyance Act ("UFCA"), specific creditors who have been defrauded by the transfer of a debtor's property are protected. *N.Y. Debt. & Cred. Law §§ 270-281*. The UFCA addresses both constructive and actual fraudulent conveyances.

a.    **AOL's Transfer of Tacoda's Assets to Itself From 2007 to Mid-2009 Amounted to Constructive Fraud**.

Tacoda's transfer of its corporate assets to AOL from 2007 to 2009 amounted to a constructive fraudulent conveyance. A constructive fraudulent conveyance occurs where the transfer is made without fair consideration, *N.Y. Debt. & Cred. Law § 272*, and the transferor is or will be rendered insolvent, *N.Y. Debt. & Cred. Law § 273*, or will be left with unreasonably small capital, *N.Y. Debt. & Cred. Law § 274*, or intends or believes that it will incur debts beyond its ability to pay as they mature, *N.Y. Debt. & Cred. Law § 275. MFS/Sun Life Trust-High Yield Series v. Van Dusen Airport Services Co.*, 910 F. Supp. 913, 936 (S.D.N.Y. 1991); *Crowthers McCall Pattern, Inc. v. Lewis*, 129 Bankr. 992, 997 (S.D.N.Y. 1991). It is well established that these standards apply to present and future creditors, *N.Y. Debt. & Cred. Law §§ 274-275*, "without regard to the actual intent of the transferor or the transferee." *Crowthers McCall,* 129 Bankr. at 997.

SHAUB & WILLIAMS LLP
12121 WILSHIRE BLVD. STE 205
LOS ANGELES CA, 90025
(310) 826-6678 FAX (310) 826-8042
LAWFIRM@SW-LAW.COM

19    **MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

1

### i.  Lack of Fair Consideration.

2

The threshold question in analyzing constructive fraud is whether the transfer was made

3

for fair consideration.  Courts have found that, "unlike the doctrine of consideration in contract

4

law, [the value received by the debtor] must pass a measurement test," *MFS/Sun Life,* 910 F.

5

Supp. at 937 (citing *Lumber Supply, Inc. v. Byrne.,* 100 Bankr. 127, 134 (Bankr. D. Mass.

6

1989)), and "be reasonably equivalent in value to the property transferred or obligation

7

assumed, *id.* (citing *Murphy v. Mentor Savings Bank,* 126 Bankr. 370, 393 (Bankr. D. Mass.

8

1991)).

9

Due to the acquisition by AOL of Tacoda, close to $275 million was paid out to

10

Tacoda's shareholders for their stock holdings as shown in public filings.  (Ex. 14 at 68.)

11

However, Tacoda's purchase price failed to accrue any benefit to the corporation and future

12

creditors such as Augme were left without any relief.  AOL subsequently has been found to

13

have transferred virtually all the assets of Tacoda to it and its other divisions.  The corporation

14

itself was apparently not given adequate consideration or has not been left with sufficient assets

15

to satisfy creditor debts, including lawsuits arising out of its infringing technology.

### ii.  Insolvency.

16

In the absence of fair consideration, the burden shifts to the transferor to prove that the

17

debtor was solvent at the time of the conveyance. *MFS/Sun Life,* 910 F. Supp. at 938.  During

18

the period of Tacoda's fraudulent transfer to AOL, Tacoda, from what has been seen, was

19

rendered insolvent with insufficient assets to sustain its business and ensure payment to Augme

20

should it prevail.  Since mid-2007, AOL has engulfed Tacoda's assets, customers, intellectual

21

property, technology, key management and engineering personnel, and revenues.  According to

22

Tacoda's own disclosures, Tacoda's income statements ended June 30, 2007, the time of the

23

merger.

24

In addition, under *N.Y. Debt. & Cred. Law § 275*, Tacoda incurred debts beyond its

25

ability to pay them as they matured.  Tacoda's liabilities have exceeded its assets during the

26

pendency of this suit since the time of the merger by reason of AOL's progressive liquidation of

27

Tacoda.  Equitably insolvent and essentially dissolved, Tacoda also lacks sufficient capital to

28

20

**MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

SHAUB & WILLIAMS LLP
12121 WILSHIRE BLVD, STE 205
LOS ANGELES CA, 90025
(310) 826-6678 FAX (310) 826-8042
LAWFIRM@SW-LAW.COM

pay its creditors under *N.Y. Debt. & Cred. Law § 274*. Through its own documentation and depositions of former Tacoda employees, Tacoda has demonstrated that it has not remained a solvent, separate entity from AOL. Thus, the facts presented by Augme provide sufficient evidence for assertion of a cause of action for constructive fraudulent conveyance under the UFCA.

   **b.**  **AOL's Transfer of Tacoda's Assets to Itself From 2007 to Mid-2009 Amounted to Actual Fraud.**

  Under *N.Y. Debt. & Cred. Law § 276*, a transfer made with actual intent to defraud will be deemed fraudulent regardless of whether Tacoda is found to have received fair consideration for its conveyance to AOL. Courts have determined that direct evidence of an actual intent to defraud is not necessary, but may be inferred through well-established "badges of fraud." *Donald Dean & Sons, Inc. v. Xonitek Systems Corp.*, 656 F. Supp. 2d 314, 328 ((N.D.N.Y. 2009); *A.J. Heel Stone, L.L.C.* v. *Evisu* Int'l, S.R.L., 03 Civ. 1097, 2006 U.S. Dist. LEXIS 34152, at *9, (S.D.N.Y. May 25, 2006); *MFS/Sun Life,* 910 F. Supp. at 935. Such factors include (1) a close relationship between the parties to the transfer; (2) suspicious timing of transactions after the debt had been incurred or a legal action against the debtor had been threatened; (3) the transferor's knowledge of the creditor's claim and the transferor's inability to pay it; (5) the use of fictitious parties; and (6) retention of control of property by the transferor after the conveyance. *Id.*

  Due to Augme's action against Tacoda, filed in August 2007, Tacoda was fully aware that Augme was a potential future creditor. Further disclosures and settlement discussions beginning in early 2008 and continuing to early 2010 revealed that Augme's claim would be in the millions. Thus, the transfer of Tacoda's assets to AOL thereafter was made "with actual intent . . . to hinder, delay, or defraud . . . future creditors." *N.Y. Debt. Cred. Law § 276*. The complete domination and control over Tacoda by AOL further evidences Tacoda's inability to pay Augme's potential damages. Rendered virtually dissolved and insolvent by such control, Tacoda is unable to pay any significant portion of Augme's anticipated damages resulting from Augme's patent suit. As a result, Augme has also established sufficient evidence to support a cause of action arising out of an actual fraudulent conveyance from Tacoda to AOL.

SHAUB & WILLIAMS LLP
12121 WILSHIRE BLVD. STE 205
LOS ANGELES CA, 90025
(310) 826-6678 FAX (310) 826-8042
LAWFIRM@SW-LAW.COM

**MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

### III.

### CONCLUSION

Should the court not allow amendment of the complaint to add the above claims, Augme will be kept from a full and complete remedy which arises under its claims in this action, which would violate the spirit and practice of the Federal Rules of Civil Procedure.

Based upon the foregoing, Augme respectfully requests the Court to grant its Motion for Leave to file its Second Amended Complaint and to deem Augme's [Proposed] Second Amended Complaint filed forthwith.

Dated: May 17, 2010

SHAUB & WILLIAMS LLP

David R. Shaub
Attorneys for Plaintiff,
**AUGME TECHNOLOGIES, INC.**

SHAUB & WILLIAMS LLP
12121 WILSHIRE BLVD, STE 205
LOS ANGELES CA, 90025
(310) 826-6678 FAX (310) 826-8042
LAWFIRM@SW-LAW.COM

22

**MOTION FOR LEAVE TO FILE SECOND
AMENDED COMPLAINT**